## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIM BURTON, | } | |
| | } | No. 2:21-cv-01215-LPL |
| Plaintiff, | } | |
| | } | Magistrate Judge Lenihan |
| vs. | } | |
| | } | |
| MARC ZIEGLER, *in his Individual Capacity* | } | |
| *as a Trooper for the Pennsylvania State Police*, | } | |
| | } | ***Electronically Filed.*** |
| Defendant. | } | |

### BRIEF IN SUPPORT OF
### PSP DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. STATEMENT OF THE CASE

Tim Burton ("Plaintiff") initiated the present action on September 13, 2021, by filing a counseled Complaint [ECF 1].  The Complaint recounts events in May of 2017 where Plaintiff's step-daughter made allegations of a "sexual nature" against the Plaintiff leading the PSP Defendant to eventually charge and arrest Plaintiff.  Complaint [ECF 1], at 3. Plaintiff asserted the charges against him eventually resolved in his favor in 2020.

In the Complaint, Plaintiff brought two (2) counts against the PSP Defendant, Count I for malicious prosecution in violation of the Fourth Amendment and Count II for reckless investigation in violation of the Due Process clause of the Fifth and Fourteenth Amendments. Complaint [ECF 1], at 7-11.  The PSP Defendant moved to dismiss the reckless investigation claim at Count II from the Complaint.  See [ECF 11-12].  The motion was granted, albeit without prejudice.  See [ECF 19-20].

Plaintiff thereafter filed an Amended Complaint [ECF 23] on May 20, 2023, which the PSP Defendant answered on June 2, 2022.  See [ECF 24]. In the Amended Complaint, Plaintiff reiterated his claims of malicious prosecution and reckless investigation, although the reckless

investigation claim at Count II was now asserted under the Fourth Amendment.  See Amended

Complaint [ECF 23], at 7-11.  The Parties have completed discovery and the PSP Defendant now

moves for summary judgment on all claims in this matter because there are no genuine issues as

to any material facts with respect to this claim.[1]

## II. <u>STANDARD OF REVIEW</u>

This Court has set forth the applicable legal standard for review of a motion for summary

judgment under Rule 56 of the Federal Rules of Civil Procedure:

> The purpose of summary judgment is 'to dispose of factually
> unsupported claims and defenses.'  <u>Omnipoint Comm. Enter., L.P.
> v. Newtown Tp.</u>, 219 F.3d 240, 242 (3d Cir. 2000).  Summary
> judgment is appropriately granted in favor of the moving party if
> the movant can demonstrate that no genuine issue of material fact
> exists, such that the movant is entitled to judgment as a matter of
> law.  Fed. R.Civ. P. 56(a).  Accordingly, to survive a motion for
> summary judgment, the *non-movant* must establish that there is
> indeed a genuine issue of material fact, which requires the action to
> proceed to a trier of fact.  See <u>Matsushita Elec. Indus. Co. v. Zenith
> Radio Corp.</u>, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d
> 538 (1986)(emphasis added).  An issue is 'genuine' only if it
> would prevent a rational factfinder, when viewing the record as a
> whole, from granting judgment for the moving party.  See <u>id.</u> at
> 586, 106 S.Ct. 1348.  Regarding materiality, the substantive law
> identifies which facts are 'material,' meaning only those materially
> and disputed facts that 'might affect the outcome of the suit under
> the governing law will preclude an entry of summary judgment.'
> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct.
> 2505, 91 L.Ed.2d 202 (1986).

<u>Lynn ex rel. Lynn v. Yamaha Golf-Car Co.</u>, 894 F.Supp.2d 606, 622-623 (W.D.Pa. 2012).

---

[1] The PSP Defendant has prepared a Statement of Material Facts Not In Dispute ("SMF") and a
compendium of Attachments ("SMF Exhibits") thereto, which set forth the facts of this case in
significant detail.  Thus, no further exposition of the facts will be included herein, except as
needed in the development of the legal issues below.

### III. <u>ARGUMENT</u>

**A. <u>Trooper Ziegler is entitled to summary judgment on Plaintiff's claim of Malicious Prosecution because there was sufficient probable cause to initiate criminal proceedings against Plaintiff.</u>**

Plaintiff is asserting a claim of Malicious Prosecution under 42 U.S.C. § 1983 ("Section 1983"), based on alleged violations of his Fourth Amendment rights.[2]  <u>See</u> Amended Complaint [ECF 23], at ¶¶ 32-42.  A constitutional claim for malicious prosecution stems from the Fourth Amendment's prohibition "against unreasonable searches and seizures," U.S. Const. Amend IV, and is "intended to redress [ ] the deprivation of liberty accompanying prosecution, not prosecution itself."  <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 603 (3d Cir. 2005).

To prevail on a § 1983 malicious prosecution claim, a plaintiff must prove that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  <u>McKenna v. City of Philadelphia</u>, 582 F.3d 447, 461 (3d Cir. 2009)(*citing* <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003)).  <u>See</u> <u>also</u> <u>Stafford v. Morris</u>, 2020 WL 3481736, *2 (3d Cir. 2020)(*citing* <u>DiBella v. Borough of Beachwood</u>, 407 F.3d at 601).

---

[2] Initially, in order to state a cognizable claim pursuant to Section 1983, a plaintiff "must establish (1) that 'the conduct complained of was committed by a person acting under color of state law' and (2) that the 'conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  <u>See</u> <u>Shaw v. Stackhouse</u>, 920 F.2d 1135, 1141-1142 (3d Cir. 1990)(*quoting* <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981)).

 It is conceded that the PSP Defendant was acting under color of law as a Trooper with the PSP with respect to the conduct that is alleged –the investigation and charging of Plaintiff with criminal offenses arising from certain interactions with his step-daughter.  However, the record reveals that Plaintiff cannot sufficiently establish that the PSP Defendant violated his constitutional rights under the Fourth Amendment as alleged.

A malicious prosecution claim fails as a matter of law if a plaintiff has "not proffered evidence sufficient to create a triable issue of fact as to all five prongs." Domenech v. City of Philadelphia, 2009 WL 1109316, *9 (E.D.Pa. 2009), aff'd, 373 F.App'x 254 (3d Cir. 2010). For purposes of the instant motion, Trooper Ziegler concedes that Plaintiff can establish that Trooper Ziegler "commenced a criminal proceeding" and that "the proceeding terminated in plaintiff's favor." However, based on the record, Plaintiff cannot establish at least two of the remaining elements, including the critical element of lack of probable cause:

*1. Trooper Ziegler had probable cause to initiate criminal proceedings against Plaintiff.* With respect to the issue of probable cause, the Third Circuit has said that "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995)(cited in Berry v. Kabacinski, 704 F.App'x 71, 73 (3d Cir. 2017)).

The absence of probable cause to initiate a criminal proceeding is an essential element of a civil rights claim for false arrest and malicious prosecution. See Basile v. Township of Smith; 752 F.Supp.2d 643, 650-651 (W.D.Pa. 2010); Watson v. Witmer, 183 F.Supp.3d at 612-613. See also Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)(en banc). Such claims necessarily fail if probable cause existed for initiating the criminal proceeding, as a matter of law, despite its ultimate termination in the plaintiff's favor by an acquittal following the criminal trial. See Michigan v. DiFillipo, 433 U.S. 31, 36 (1979); Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)(proper inquiry is not whether the person arrested actually committed the offense, but rather, whether the arrested officers had probable cause to believe the person had

committed the offense).  See Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005)(citing Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003)).

"[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction."  Wright v. City of Philadelphia, 409 F.3d at 602 (citing Michigan v. DiFillipo, 443 U.S. at 36 ("We have made clear that the kinds and degrees of proof and the procedural requirements necessary for conviction are not prerequisites to a valid arrest"); U.S. v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011)(probable cause is not proof beyond a reasonable doubt).  Indeed, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright v. City of Philadelphia, 409 F.3d 602 (citing Adams v. Williams, 407 W.U. 143, 149 (1972).

"While '[t]he probable-cause standard is incapable of precise definition or quantification,' Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain."  Wright v. City of Philadelphia, 409 F.3d at 601-602.  Nevertheless, probable cause requires more than mere suspicion, but less than evidence of guilt beyond a reasonable doubt. Orsatti v. N.Y. State Police, 71 F.3d 480, 482-483 (3d Cir. 1995).  Indeed, "[s]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment...." Hill v. California, 401 U.S. 797 (1971).

The Third Circuit, in reducing the concept to its essence –as informed by precedent– has characterized it as being no more than a "fair probability" that a person committed the charged crime.  See Wilson v. Russo, 212 F.3d 781, 789 (3d. Cir. 2000).  Accordingly, "[i]f 'at the moment the arrest was made ... the facts and circumstances within [the defendant officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant

a prudent man in believing' that the plaintiff had violated the law, probable cause is present."

See Merkle v. Upper Dublin School District, 211 F.3d 782, 789 (3d Cir. 2000)(*citing* Hunter v.

Bryant, 502 U.S. 224, 228 (1991)(*quoting* Beck v. Ohio, 379 U.S. 89, 91 (1964))).  Critically, the

probable cause standard does not require the arresting officer to resolve conflicting evidence

correctly or to have his assessment of the credibility of witnesses prove to be an accurate

determination in retrospect, but only mandates that his belief have been reasonable at the time

that the arrest was made.  Wright v. City of Philadelphia, 409 F.3d at 603.

Finally, although "[w]hether probable cause existed for an arrest is generally a question

of fact for the jury, see Merkle v. Upper Dublin School District, 211 F.3d at 788 (citations

omitted), where the reviewing court finds that the evidence, viewed in the light most favorable to

the plaintiff, reasonably would not support a contrary factual finding, then the court may

conclude that probable cause exists as a matter of law.  Id., at 788-789 (citation omitted)."

Basile v. Township of Smith, 752 F.Supp.2d 643, 651 (W.D.Pa. 2010).

With respect to Plaintiff's present claim, Trooper Ziegler is entitled to summary

judgment because he had sufficient probable cause to believe that Plaintiff had committed the

charged offenses at the time criminal process was initiated.  In Stafford v. Morris, *supra*, the

Third Circuit explained that

> '[P]robable cause to arrest exists when the facts and circumstances within
> the arresting officer's knowledge are sufficient in themselves to warrant a
> reasonable person to believe that an offense has been or is being
> committed by the person to be arrested.' Dempsey v. Bucknell Univ., 834
> F.3d 457, 467 (3d Cir. 2016)(citation omitted).  It is a 'fluid concept' and
> requires courts to apply a 'totality-of-the-circumstances approach.'
> Illinois v. Gates, 462 U.S. 213, 232–33, 103 S.Ct. 2317, 76 L.Ed.2d 527
> (1983).

Stafford v. Morris, 2020 WL 3481736, at *3.

Plaintiff was charged with several offenses under the Pennsylvania Crimes Code, including Rape (18 Pa. C.S. § 3121), Statutory Sexual Assault (18 Pa. C.S. § 3122.1), Involuntary Deviate Sexual Intercourse (18 Pa. C.S. § 3123), Aggravated Indecent Assault (18 Pa. C.S. § 3125), Indecent Assault (18 Pa. C.S. § 3126), along with Endangering Welfare of Children (18 Pa. C.S. § 4304) and Corruption of Minors (18 Pa. C.S. § 6301). See SMF, at ¶¶ 24-25. With regard to the specific charges against Plaintiff, these offenses generally required proof of sexual intercourse by forcible compulsion and/or proof of the victim's age at the time of the offense.

The Superior Court of Pennsylvania has explained that

> [a] defendant is guilty of rape, in relevant part, if he engages in sexual intercourse with a complainant by forcible compulsion. 18 Pa. C.S. § 3121(a). 'Forcible compulsion' is defined as '[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied.' 18 Pa. C.S. § 3101.7
>
> A defendant commits aggravated indecent assault, in pertinent part, if he 'engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures' and 'the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.' 18 Pa. C.S. § 3125(a)(8).
>
> A defendant is guilty of statutory sexual assault, in relevant part, if he 'engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other.' 18 Pa. C.S. § 3122.1(b). 'Sexual intercourse' is defined as: 'In addition to its ordinary meaning, includes intercourse *per os* or *per anus*, with some penetration however slight; emission is not required.' 18 Pa. C.S. § 3101.
>
> Lastly, this Court has long recognized that '[a] rape victim's uncorroborated testimony to penal penetration is sufficient to establish sexual intercourse and thus support a rape conviction.' Commonwealth v. Wall, 953 A.2d 581, 584 (Pa. Super. 2008), *appeal denied*, 963 A.2d 470 (Pa. 2008), *citing* Commonwealth v.

>> Poindexter, 646 A.2d 1211, 1214 (Pa. Super. 1994), *appeal denied*,
>> 655 A.2d 512 (Pa. 1995)…

Commonwealth v. Garlick, 2019 WL 4899222, *3 (Pa. Super. 2019).  See also Commonwealth

v. Lowry, 2020 WL 1490947, *5 (Pa. Super. 2020).

The Superior Court has also explained that

>> [a] person is guilty of IDSI is he or she engages in deviate sexual
>> intercourse with a person who is less than sixteen years old and the
>> person is four or more years older than the complainant.  18 Pa.
>> C.S. § 3123(a)(7).  The definition of deviate sexual intercourse
>> includes oral sex 'with some penetration however slight; emission
>> is not required.' 18 Pa. C.S. § 3101.

Commonwealth v. Trusty, 2018 WL 3433582, *2 (Pa. Super. 2018).  See also Commonwealth v.

Smolko, 666 A.2d 672, 675 (Pa. Super. 1995)("The test for forcible compulsion under the IDSI

section of the Crimes Code is identical with the test for forcible compulsion under § 3121, the

rape statute")(*citing* Commonwealth v. Williams, 439 A.2d 765 (Pa. Super. 1982).

With regard to the offense of Endangering Welfare of Children ("EWOC"),

>> The crime of EWOC is defined, in relevant part, as follows: 'A
>> parent, guardian or other person supervising the welfare of a child
>> under 18 years of age, or a person that employs or supervises such
>> a person, commits an offense if he knowingly endangers the
>> welfare of the child by violating a duty of care, protection or
>> support.' 18 Pa. C.S. § 4304(a)(1).  EWOC 'is a specific intent
>> offense which was enacted in broad terms to safeguard the welfare
>> and security of children.'  Commonwealth v. Fewell, 439 Pa.
>> Super. 541, 654 A.2d 1109, 1117 (1995)(citation omitted).  To be
>> convicted under this statute, the Commonwealth must prove a
>> 'knowing violation of a duty of care.'  Id. (*quoting* Commonwealth
>> v. Cardwell, 357 Pa. Super. 38, 515 A.2d 311, 313 (1986)).

Commonwealth v. Vela-Garrett, 251 A.3d 811, 815 (Pa. Super. 2021).  See also Commonwealth

v. Veals, 2013 WL 11261652, *9 (Pa. Super. 2013)(sustaining EWOC conviction based on

pattern of sexual assaults on minor child)

Finally, the Superior Court has explained that

8

> [t]o support a charge of corruption of minors, the Commonwealth must prove that Appellant, 'being at least 18 years of age, "by any act corrupt[ed] or tend[ed] to corrupt the morals of any minor less than 18 years of age."' <u>Commonwealth v. Barger</u>, 956 A.2d 458, 460 (Pa. Super. 2008)(*en banc*), *appeal denied*, 980 A.2d 109 (Pa. 2009), *quoting* 18 Pa. C.S.A. § 6301(a)(1). '[W]e [have] held that actions that tend[ ] to corrupt the morals of a minor [a]re those that would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain.' <u>Commonwealth v. Slocum</u>, 86 A.3d 272, 277 (Pa. Super. 2014)(internal quotation marks and citation omitted).

<u>Commonwealth v. Duppstadt</u>, 2014 WL 10936777, *2 (Pa. Super. 2014).

Moreover, "[i]llicit sexual contact between a defendant and a minor is sufficient to prove corruption of minors." <u>Commonwealth v. J.P.I.</u>, 2015 WL 7208869, *4 (Pa. Super. 2015)(*citing* <u>Commonwealth v. Castelhun</u>, 889 A.2d 1228, 1234 (Pa. Super. 2005)(holding defendant's repeated sexual assaults on minor child satisfied the elements of corruption of minors).

At the time Plaintiff was arrested, Trooper Ziegler had received information from the putative victim, D.M.  <u>See</u> SMF, at ¶¶ 11-12.  Particularly, D.M. provided information to Trooper Ziegler including that Plaintiff had forced her to perform oral sex on Plaintiff, that Plaintiff had forced her to have vaginal intercourse, and that these sexual assaults had occurred beginning in the Summer of 2012, when D.M. would have been 14 years old, until the Winter of 2016, when she was nearly 18 years old.  <u>Id.</u>

Based on this information, Trooper Ziegler had probable cause to believe that various sexual offenses had been committed by Plaintiff against D.M.  As this Court has observed,

> [t]he Third Circuit Court of Appeals has held that an officer has probable cause to arrest a suspect based on a credible report from an eyewitness, or a credible statement from a victim of the crime. <u>See</u>, <u>Merkle</u>, *supra*, 211 F.3d at 790 (finding that officer had probable cause to arrest a teacher for theft by taking based on a credible report from the school principal who witnessed the alleged crime); <u>also</u> <u>see</u>, <u>Mitchell v. Obenski</u>, 134 F.App'x 548, 551 (3d Cir. 2005)(officer had probable cause to arrest a suspect for sexual

assault based on the victim's credible account of the sexual assault which was supported by hotel records); Pardue v. Gray, 136 F.App'x 529, 533 (3d Cir. 2005)(officer had probable cause to arrest a suspect on charges of harassment and stalking based on the victim's credible report of being stalked and harassed); Feldman v. Community College of Allegheny, 85 F.App'x 821, 825 (3d Cir. 2004)(officer had probable cause to arrest a suspect for engaging in defiant trespass based on the statement of a security guard that he instructed the suspect to leave the premises, but he refused to leave).

Miller v. County of Allegheny, 2006 WL 3332809, *5 (W.D.Pa. 2006).

A more recent pronouncement by a district court in New Jersey "in the specific context of sexual assault" is equally persuasive:

The Third Circuit applies a 'rule that statements of a victim witness are typically sufficient to establish probable cause.' Dempsey[ v. Bucknell University], 834 F.3d [457] at 477 [(3d Cir. 2016)]. Indeed, in the specific context of sexual assault, the Third Circuit has repeatedly held that a victim's account of a sexual assault is sufficient as a matter of law to establish probable cause. Carson v. Aurand, 837 F.App'x 121, 123 (3d Cir. 2020)(*per curiam*); Davison v. Sheaffer, 820 F.App'x 167, 171 (3d Cir. 2020); McCoy v. Taylor, 819 F.App'x 84, 86 (3d Cir. 2020); Jecrois v. Sojak, 736 F.App'x 343, 348 (3d Cir. 2018); McKinney v. Passaic Cnty. Prosecutor's Off., 612 F.App'x 62, 68 (3d Cir. 2015)(*per curiam*); Coley v. County of Essex, 462 F.App'x 157, 160 (3d Cir. 2011)(*per curiam*); Mitchell v. Obenski, 134 F.App'x 548, 551 (3d Cir. 2005); Bresko v. John, 87 F.App'x 800, 802 (3d Cir. 2004); Petaccio v. Davis, 76 F.App'x 442, 445 (3d Cir. 2003). Police officers do not sit as finders of fact, and they can generally assume that victims are credible, because their motive is ostensibly concern for their or others' safety. Further, victims are presumed to have a sufficient basis of knowledge, as the crime happened to them. Indeed, for sexual-assault crimes (particularly lack-of-consent, as opposed to forcible, assaults), the victim's testimony may be the only evidence available. Easton v. City of Boulder, 776 F.2d 1441, 1449-50 (10th Cir. 1985)(*cited favorably in* Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997), *abrogated on other grounds by* Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)); *see generally* 2 Wayne R. LaFave, Search & Seizure § 3.4(a) (6th ed. Sept. 2020 update). Because probable cause is not an overly demanding test, and because the testing of a victim statement is a matter for post-arrest proceedings, the veracity and basis for

knowledge inherent in a victim statement is generally sufficient for probable cause. <u>Wilson</u>, 212 F.3d at 793-95 (Garth, J., concurring).

<u>Collick v. William Paterson University</u>, 2021 WL 2374388, *7 (D.N.J. 2021), *aff'd*, 2022 WL 14002177 (3d Cir. 2022).

The *Collick* court continued:

> Police officers do not sit as finders of fact, and they can generally assume that victims are credible, because their motive is ostensibly concern for their or others' safety.  Further, victims are presumed to have a sufficient basis of knowledge, as the crime happened to them.  Indeed, for sexual-assault crimes (particularly lack-of-consent, as opposed to forcible, assaults), the victim's testimony may be the only evidence available.  <u>Easton v. City of Boulder</u>, 776 F.2d 1441, 1449-50 (10th Cir. 1985)(*cited favorably in* <u>Sharrar v. Felsing</u>, 128 F.3d 810, 818 (3d Cir. 1997), *abrogated on other grounds by* <u>Curley v. Klem</u>, 499 F.3d 199 (3d Cir. 2007)); *see generally* 2 Wayne R. LaFave, Search & Seizure § 3.4(a) (6th ed. Sept. 2020 update).  Because probable cause is not an overly demanding test, and because the testing of a victim statement is a matter for post-arrest proceedings, the veracity and basis for knowledge inherent in a victim statement is generally sufficient for probable cause. <u>Wilson</u>, 212 F.3d at 793-95 (Garth, J., concurring).

<u>Collick v. William Paterson University</u>, 2021 WL 2374388, at *7.

Trooper Ziegler had a credible report that Plaintiff had sexually assaulted his step-daughter on several occasions, with the step-daughter providing the information first hand.  In light of the foregoing pronouncements on the probable cause standard, it would appear that Trooper Ziegler had probable cause to file the charges against Plaintiff.  A recent Third Circuit decision cited by the *Collick* court appears to provide further support for Trooper Ziegler's argument in this regard.  In <u>Carson v. Aurand</u>, 837 F.App'x 121 (3d Cir. 2020), the plaintiff asserted a malicious prosecution claim based on "his prosecution for the alleged sexual assault of his minor niece, 'S.W.,' who lived with [plaintiff] and his girlfriend for several weeks in 2013." <u>Id.</u>, at 122.  As recounted by the court:

>The following year, S.W. disclosed to Dauphin County Children
>and Youth Services ("DCCYS") that she had been sexually
>assaulted. She contacted DCCYS on three separate occasions,
>identifying first her father, then her mother, and then [plaintiff] as
>her abusers. In January 2015, Mifflin County Children and Youth
>Services ("MCCYS") sent a report to [the defendant police
>detective] describing S.W.'s allegations and naming Carson as the
>alleged perpetrator. [The defendant police detective] initiated an
>investigation. Thereafter, MCCYS conducted a medical
>examination of S.W.—which revealed no evidence of an assault or
>previous intercourse—as well as a forensic interview. [The
>defendant police detective] observed the interview, during which
>S.W. made several statements that identified [plaintiff] by name
>and described the alleged incident in detail.

Carson v. Aurand, 837 F.App'x at 122.

The plaintiff was arrested pursuant to a warrant and charged with several sex offenses,

including Rape of a Child, Statutory Sexual Assault, Involuntary Deviate Sexual Intercourse, and

Aggravated Indecent Assault on a Child, but was ultimately acquitted of all charges.

Nevertheless, the defendant police detective obtained summary judgment on the plaintiff's

malicious prosecution, which was affirmed on appeal to the Third Circuit:

>[The plaintiff's] argument that [the defendant police detective's]
>investigation was unconstitutional because it was limited to her
>interview with S.W. is unavailing. 'When a police officer has
>received a reliable identification by a victim of his or her attacker,
>the police have probable cause to arrest.' Sharrar v. Felsing, 128
>F.3d 810, 818 (3d Cir. 1997), abrogated on other grounds by
>Curley v. Klem, 499 F.3d 199 (3d Cir. 2007). Thus, S.W.'s
>identification of [the plaintiff] was sufficient to provide probable
>cause. See Aurand Dep., ECF No. 32-6 at 25–26 (explaining that
>Aurand believed S.W. to be credible).
>
> Moreover, the record evidence shows that [the defendant police
>detective] made no reckless or material factual omissions in
>obtaining the arrest warrant. During the preliminary hearing, she
>admitted that her investigation consisted solely of her observation
>of S.W.'s interview, despite knowing about S.W.'s medical
>examination. [The defendant police detective] stated in her
>deposition that, in her professional experience, it is not uncommon
>for children (who heal faster than adults) to show no signs of
>sexual abuse upon examination, especially when the exam is

> conducted more than a year past the date of the alleged abuse. Thus, she considered the medical examination to be inconclusive, rather than exonerating, evidence. This interpretation was corroborated by the medical examiner.
>
> [The plaintiff's] other arguments are likewise without merit. The facts that [the plaintiff] was arrested without DNA evidence, that [defendant police detective] did not speak to certain witnesses, and that there were other possible suspects at the time [the plaintiff] was arrested do not negate [the defendant police detective's] reasonable belief that he had committed the alleged offense. <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995)(explaining that "for Fourth Amendment purposes, the issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested"). Nor does the record support [the plaintiff's] assertions that [the defendant police detective] stated under oath that she knew that he was innocent before arresting him and that the Mifflin County Police Department sent him a 'threatening letter.'

<u>Carson v. Aurand</u>, 837 F.App'x 121, 123-124 (citations to the record omitted).

Instantly, Trooper Ziegler was presented with credible statements from a now adult who stated that she had been sexually abused by her step-father. At Trooper Ziegler's deposition, he testified, under oath, that

> [D.M.] made a statement -- or she filed a complaint with us that seemed reasonably believable through my training and experience. A year after this stopped happening, she came forward. I believed that she was telling the truth. I wholeheartedly believed her....
>
> The statements she made were criminal in nature, and I believed her. And those statements were heinous, what she was saying. And like I said, if a victim of crime comes into the barracks and states a crime has been committed against her, we do a level of interviewing. And I talked to her, and I watched body language. I watched how she communicates to me what happened.
>
> I've interviewed many people that I didn't believe, but this case, [D.M.], I did believe her.

Ziegler Dep., at 13, 14.

In <u>Waters v. Cheltenham Township</u>, 700 F.App'x 149 (3d Cir. 2017), the Third Circuit offered that a malicious prosecution claim could not prevail where it was "reasonable for the police to believe the eyewitness was telling the truth when they initiated the prosecution.  <u>See</u> <u>Sharrar v. Felsing</u>, 128 F.3d 810, 818-819 (3d Cir. 1997)("When an officer has received his information from some person—normally the putative victim or an eye witness[sic]—who it seems reasonable to believe is telling the truth, he has probable cause")(*quoting* <u>Grimm v.</u> <u>Churchill</u>, 932 F.2d 674, 675 (7th Cir. 1991))), *abrogated on other grounds by* <u>Curley v. Klem</u>, 499 F.3d 199 (3d Cir. 2007)."  <u>Id.</u>, at 153.

Here, the summary judgment record discloses no basis upon which to find that Trooper Ziegler was unreasonable in acting upon the information received from the alleged victim regarding her allegations against Plaintiff.  Thus, he is entitled to summary judgment on the claim of Malicious Prosecution at Count I of the Amended Complaint.

Plaintiff nevertheless alleges that Trooper Ziegler "purposefully and intentionally omitted from his Investigative Report the fact that the step-daughter recanted; he did this so that no one would ever know that Plaintiff's accuser recanted her allegations the very day after she initially made the false allegations" and that he "knew that he lacked probable cause to charge the Plaintiff after the step-daughter recanted her story. This is why he purposefully chose not to document that she appeared at the Barracks the very next day and recanted."  <u>See</u> Amended Complaint [ECF 23], at ¶¶ 16, 36.  However, there is no evidence in the summary judgment record to support these allegations.

First, while D.M. did return to the Belle Vernon Station on May 8, 2017, to speak with Trooper Ziegler, at no time did she recant her prior allegations against Plaintiff.  <u>See</u> Ziegler Dep., at 44-46; Swan Dep., at 42.  Indeed, Trooper Ziegler testified at his deposition regarding

D.M.'s visit to PSP on May 8, 2017, and stated that D.M. did not say that she had made up the charges against Plaintiff or that she was there to recant or words to that effect.  See Ziegler Dep., at 45

Swan had testified earlier in her deposition that D.M. had told her on the evening of May 7, 2017, that "I don't want to do this, Mom."  Swan Dep., at 30.  Swan then contacted her brother, whom she said "was a police officer,' and he stated "'She wants to recant.'"  Id.  Her bother then advised that "'She has to call the police barracks' … 'She needs to tell Ziegler that she does not want to proceed with this.'"  Id.  While this testimony reflects some confusion over the meaning of the word "recant," Swan later testified at her deposition as follows:

> Q.      With regard to the voice mails that [D.M.] left to Trooper Ziegler on the night of the 7th and it would have been the morning of the 8th –
>
> A.      Uh-huh.
>
> Q.      -- did you hear those voice mails?
>
> A.      Yes.
>
> Q.      Did you hear her end of the conversation?
>
> A.      Yes.
>
> Q.      And what did she say?
>
> A.      She said that she wanted to recant.  She did not want to go through with this.
>
> Q.      Okay.  Those are kind of two different things.  Did she say she didn't want to go through with it?
>
> A.      Different voice mails, different responses.
>
> Q.      In those conversations you had with [D.M.], did she ever -- and let's start with on the night of the 7th, the morning of the 8th.  Did she ever tell you that this never happened? 'I'm making it up'?
>
> A.      She did not.  She still has not.
>
> Q.      That was my next one.  Has she ever told you that she was making this up?
>
> A.      (Witness shakes head no.)
>
>         (Whereupon, there was a brief court reporter clarification.)

THE WITNESS: No.

Swan Dep., at 41-42.

Finally, Plaintiff testified at his deposition that his belief that D.M. had recanted was solely "[b]ased on the fact that her mother took her to the police station day two after she made the allegation to take it back."  Burton Dep., at 24:2-4.  However, Plaintiff conceded that he was not present when D.M. went to the police station on May 8, 2017, and that he never heard D.M. recant or state that she had fabricated the allegations against him. Burton Dep., at 24:5-20.

Consequently, there is no evidence in the available summary judgment record to show that D.M. ever recanted her claims against Plaintiff.  Moreover, in addition to her mother's testimony that to this day she has never retracted her claims against Plaintiff, D.M. appeared in court and provided testimony regarding her claims at the preliminary hearing, at a pretrial habeas hearing and at trial.  See SMF, at ¶ 22.

Finally, there have been at least five prior judicial determinations equivalent to a finding of probable cause in the ensuing criminal proceedings.  As the Pennsylvania state supreme court has observed,

> [a]t the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt.  Commonwealth v. McBride, 528 Pa. 153, 595 A.2d 589, 591 (1991).  A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense.  Id. (citing Commonwealth v. Wojdak, 502 Pa. 359, 466 A.2d 991 (1983)).  The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury.  Commonwealth v. Marti, 779 A.2d 1177, 1180 (Pa. Super. 2001).  Moreover, '[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the

Commonwealth's case.'   Id. at 1180 (quoting Commonwealth v. Owen, 397 Pa. Super. 507, 580 A.2d 412, 414 (1990)).

Commonwealth v. Huggins, 836 A.2d 862, 866 (Pa. 2003).   See Commonwealth v. Williams, 911 A.2d 548, 551-553 (Pa. Super. 2006).   See also Commonwealth v. Mercado, 649 A.2d 946, 955 (Pa. Super. 1994)("to meet the burden of establishing a *prima facie* case, the Commonwealth must present evidence with respect to each of the material elements of the crime charged and to establish sufficient probable cause to warrant the belief that the accused committed the crime")(citing Commonwealth v. McBride, 528 Pa. 153, 595 A.2d 589 (1991)).

Instantly, there was a preliminary hearing in this case wherein the Magisterial District Justice bound Plaintiff over to the Court of Common Pleas to answer all respective counts of the Criminal Complaint.   See SMF, at ¶¶ 30-31.   See also SMF Exhibit F.   This reflects a judicial determination that the Commonwealth had established a *prima facie* case against Plaintiff on these charges.   As set forth above, the *prima facie* standard which applies in the preliminary hearing context is at least the equivalent of the probable cause standard for arrest.   See Commonwealth v. Huggins, supra.

> While evidence of a holding over is not conclusive as to probable cause, an independent determination of probable cause, which was established at the preliminary hearing, effectively 'show[s] that [Defendant] had probable cause to ... file all of the charges against him.'   Scheller v. Point Twp., No. 4:CV-13-0890, 2013 WL 8374681, at *11 (M.D.Pa. Nov.4, 2013) *report and recommendation adopted as modified*, No. 4:13–CV–890, 2014 WL 1846648 (M.D.Pa. May 6, 2014).   Absent allegations of a defect in the charging document, procedural infirmities, or that Defendant lied or withheld evidence at the preliminary hearing, it is impossible for this Court to infer the absence of a probable cause finding following an independent determination of probable cause at the conclusion of the preliminary hearing.   See Cosmas v. Bloomingdales Bros., Inc., 442 Pa. Super. 476, 660 A.2d 83, 87 (Pa. 1995).

Wheeler v. Wheeler, 2015 WL 1286037, *4 (M.D.Pa. 2015), *aff'd*, 639 F.App'x 147 (3d Cir. 2016).  See also Zimmerman v. Corbett, 2015 WL 539783, *5 (M.D.Pa. 2015)(observing that while "earlier probable cause determinations cited by Defendants are 'weighty evidence' of probable cause, these determinations are not conclusive evidence of probable cause that precludes Plaintiff's Section 1983 and state law malicious prosecution claims" at Rule 12 stage of litigation)(*citing cases*).

Plaintiff also challenged the sufficiency of the evidence to hold him for trial by filing a pretrial habeas corpus petition.  See SMF, at ¶¶ 35-37.  Following a hearing, the petition was denied in part and granted in part, with Counts 8 (Aggravated Indecent Assault (18 Pa. C.S. § 3125(a)(5))) and 11 (Indecent Assault (18 Pa. C.S. § 3126(a)(5)) being dismissed.[3]  See Exhibit G, at 8.  See Exhibit K, at 1.  All other counts were held for trial.  Id.

In the course of this ruling –and relying on D.M.'s testimony from the preliminary hearing as well as the pretrial habeas hearing– the trial court specifically "conclude[d] that the alleged victim's testimony was abundantly clear that the Defendant's penis was in her mouth and her vagina and that this was without her consent."  See SMF Exhibit K, at 4.

Further, as permitted by Rule 606 of the Pennsylvania Rules of Criminal Procedure,[4] at Plaintiff's criminal trial, a motion for judgment of acquittal was made by the defense at the close of the Commonwealth's case-in-chief and at the close of all the evidence.  Because the case was submitted to the jury for deliberation, each of these motions was necessarily denied.

---

[3]  The offenses at the dismissed counts required, *inter alia*, that the offender "has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance."  See 18 Pa. C.S. § 3125(a)(5) and 18 Pa. C.S. § 3126(a)(5). Based on D.M.'s testimony that she "was aware that intoxicants were being provided to her," the trial court concluded that "based upon a plain reading of the statute…" that these counts must be dismissed.  See SMF Exhibit K, at 4-5 and 5 n. 5.

[4]  See Pa. R.Crim. P. 606(A)(1) and (2).

Lastly, following the entry of the verdict and argument thereon, the Court issued an Order allowing filings regarding Rules 606 and 648 of the Pennsylvania Rules of Criminal Procedure. See SMF, at ¶ 40.  Plaintiff thereafter filed a Motion for Judgment of Acquittal pursuant to Pa. R.Crim. P. 606(a)(3) on September 23, 2019.  See SMF, at ¶ 41.  Rule 606(a)(3) allows a defendant to challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged by requesting a judgment of acquittal "filed within 10 days after the jury has been discharged without agreeing upon a verdict."  See Pa. R.Crim. P. 606(a)(3).

In the motion, Plaintiff argued that in light of the evidence presented at trial and the jury's partial verdict, he was entitled to an acquittal on all remaining counts of the Information. See SMF, at ¶ 43.  The trial court granted the motion in part and denied the motion in part, granting the motion as to the charge of Aggravated Indecent Assault-Forcible Compulsion at Count 7 because Plaintiff has been acquitted of the charge of Rape-Forcible Compulsion at Count 1.  The motion was denied as to all other remaining counts.   See SMF, at ¶ 44.

The remaining charges were ultimately *nolle prossed* by the prosecutor several months later.  See SMF, at ¶¶ 45-46.  Yet, in each instance where Plaintiff interposed a motion for judgment of acquittal, the trial court was necessarily satisfied that the Commonwealth had presented sufficient evidence at each stage to permit the case to go to the jury.  Indeed, on at least four occasions, the trial court specifically concluded that the Commonwealth had presented a *prima facie* case –or in other words– had established sufficient probable cause to warrant the belief that Plaintiff had committed the offenses charged.   Again, while not conclusive or determinative of the issue of probable cause in and of themselves, these judicial findings of probable cause are at least "weighty evidence" of probable cause, which combined with other evidence provides substantial support for Trooper Ziegler's assertion that he acted with probable

cause when arresting Plaintiff.  See McGowan v. Borough of Ambridge, 2008 WL 4200153, *8 (W.D.Pa. 2008)("While not conclusive evidence of the existence of probable cause, a decision of a neutral district justice to hold over Plaintiff for trial on the charges constitutes 'weighty evidence' that [the defendant] had probable cause to request issuance of the arrest warrant")(citing Tarlecki v. Mercy Fitzgerald Hospital, 2002 WL 1565568, *3 (E.D.Pa. 2002)).

Thus, because Trooper Ziegler' actions were reasonable and he was presented with probable cause to arrest Plaintiff on charges of [Rape, IDSI, etc.], he is entitled to summary judgment on Plaintiff's claim of malicious prosecution.

**2.  *Trooper Ziegler did not act maliciously or with a purpose apart from bringing plaintiff to justice.*** Additionally, in order to succeed on his malicious prosecution claim, Plaintiff must also establish that Trooper Ziegler acted with malice.  See Watson v. Witmer, 183 F.Supp.3d at 612-613.  This Court has recognized that "'[m]alice' exists where a defendant acts on the basis of 'hatred or ill will,' or where his or her actions 'evidence a "reckless and oppressive disregard [for] the plaintiff's rights."'" Ansell v. Ross Township, 2012 WL 1038825, *24 (W.D.Pa. 2012)(quoting Doherty v. Haverford Township, 513 F.Supp.2d 399, 409 (E.D.Pa. 2007)(quoting Hugee v. Pennsylvania Railroad Co., 101 A.2d 740, 743 (Pa. 1954))).  While, under certain circumstances, malice can be inferred from an officer's decision to initiate criminal charges in the absence of probable cause, id., the record fails to establish any evidence of malice on the part of Trooper Ziegler with respect to the filing of the criminal charges against Plaintiff.

There is neither allegation in Plaintiff's Complaint nor evidence in the record to show that, prior to the meeting with the alleged victim and her mother on May 7, 2017, Trooper Ziegler had any personal reason for pursuing the instant charges against Plaintiff apart from bringing Plaintiff to justice.  Indeed, Plaintiff himself testified at his deposition that he did not

"know of any other reason other than [D.M.'s] allegations why Trooper Ziegler would have filed the charges." See Burton Dep., at 27.  There is nothing in the record to show that prior to May 7, 2017, Trooper Ziegler knew or was aware of the identity of either Michele Swan, D.M. or Plaintiff.  See Ziegler Dep., at 11-12.  Indeed, it appears that it was happenstance that Trooper Ziegler was the duty officer when D.M. decided to come forward and make her report to the police.  See Ziegler Dep., at 16-17.

Accordingly, apart from any other considerations under this analysis, the absence of any evidence of malice on the part of Trooper Ziegler in filing these charges against Plaintiff undermines any claim of Malicious Prosecution asserted by Plaintiff.  Therefore, for these reasons as well, Trooper Ziegler is entitled to summary judgment on this claim.

## II. **Trooper Ziegler is entitled to the protections of qualified immunity against Plaintiff's claim of Reckless Investigation; alternatively, the claim is barred by the applicable statute of limitations.**

Plaintiff also asserts a claim for Reckless Investigation.  See Amended Complaint [ECF 23], at ¶¶ 43-51 (Count II).  Initially, this claim was brought against Trooper Ziegler under the Fifth and Fourteenth Amendments.  See Complaint [ECF 1], at ¶¶ 44-51 (Count II).  Trooper Ziegler's Rule 12 motion to dismiss this claim was granted, albeit without prejudice.  See [ECF 11-12, 19-20].  Initially, the Court noted that the defendant's status as a state actor precluded any claim based on the Fifth Amendment.  See Memorandum Opinion [ECF 19], at 4 n. 1 (*citing* Thomas v. Stanek, 2015 WL 757574, *7 n. 5 (W.D.Pa. 2015).  This Court also concluded that to the extent a reckless investigation claims existed, it was grounded in the Fourth Amendment and not in the Fourteenth Amendment.  Id., at 4 (*citing* Harvard v. Cesnalis, 973 F.3d 190, 207 (3d Cir. 2020)(*citing* Geness v. Cox, 902 F.3d 344, 354 n. 5 (3d Cir. 2018).

Although Plaintiff subsequently amended his complaint to now assert this claim under the Fourth Amendment, Trooper Ziegler is nevertheless entitled summary judgment because he is protected by qualified immunity on such a claim.  As this Court has succinctly stated,

> Plaintiff's reckless investigation claim fails.  The Court of Appeals for the Third Circuit has 'never recognized an independent due process right to be free from a reckless investigation.'  Harvard v. Cesnalis, 973 F.3d. 190, 207 (3d Cir. 2020).  To the extent that such a claim may be actionable under the Fourth Amendment, the law is settled:  officers are entitled to qualified immunity.  Id. at 208 n. 9; accord Kramer v. City of Pittsburgh, 2020 WL 5797940, at *2 (W.D.Pa. Sept. 29, 2020)(Bissoon, J., holding same).  A claim for reckless investigation has become no more 'clearly established,' prior to the investigation in this case or since.  Defendant is entitled to qualified immunity, and the claim will be dismissed with prejudice.

Kendig v. Stolar, 2022 WL 3042628, *1 (W.D.Pa. 2022)(footnote omitted).  See also Mucy v. Nagy, 2021 WL 3370792, *6 (W.D.Pa. 2021)(citing Harvard v. Cesnalis, 973 F.3d at 207 n. 9("Even if [the plaintiff] had brought the reckless investigation claim under the Fourth Amendment, the officers would nevertheless be entitled to qualified immunity because this right was not clearly established at the time of the investigation").

In Kendig, the investigation at issue occurred following an incident that occurred on October 13, 2020.  See Kendig v. Stolar, 2022 WL 3042628, at *1.  Mucy involved an incident that occurred on December 20, 2018.  See Mucy v. Nagy, 2021 WL 3370792, *1.  Here, Plaintiff challenges an investigation that resulted in the filing of criminal charges on May 10, 2017.  See SMF, at ¶¶ 11-18, 23-24.  Thus, Trooper Ziegler here is also entitled to the protections of qualified immunity because any right related to reckless investigation –to the extent such right even exists– was not clearly established at the time of his investigation of D.M.'s allegations against Plaintiff in May of 2017.

Additionally, because any reckless investigation claim would have accrued at the time of the investigation in May of 2017, Plaintiff's claim would be barred by the statute of limitations because it was not asserted until he filed his initial complaint on September 13, 2021.  As this Court has explained,

> Congress has not established a time limitation for a § 1983 cause of action.  Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in*, Kasteleba v. Judge, 325 F.App'x 153, 156 (3d Cir. 2009).  The United States Supreme Court has indicated, however, that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action.  Wilson, 471 U.S. at 278.  In Pennsylvania, the statute of limitations for tort actions is two years.  42 Pa. Con. Stat. Ann. § 5524.  Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years.  See Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir. 1985).
>
>  Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run.  See Wallace v. Kato, 549 U.S. 384, 388 (2007).  Under federal law, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'  Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir. 1998)(*quoting* Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)).  'The cause of action accrues even though the full extent of the injury is not then known or predictable.'  Wallace, 549 U.S. at 391 (citations omitted).
>
> Hill-Johnson v. Catanzaro, No. CV 19-30, 2020 WL 6110847, at *3 (W.D. Pa. Aug. 20, 2020).  Here, affording Plaintiff the most liberal construction of his *pro se* Complaint, Plaintiff's claims against the Commonwealth Defendants for illegal search and seizure, reckless investigation, equal protection, and IIED are time-barred.

Harris v. Wroble, 2021 WL 3609947, *4, *report and recommendation adopted*, 2021 WL 3603396 (W.D.Pa. 2021).

Plaintiff filed his Complaint on September 13, 2021.  See Complaint [ECF 1].  The very latest that Plaintiff would have been aware of Trooper Ziegler's inadequate investigation would

have been on September 11, 2019, at the conclusion of the criminal trial.  However, because it appears that Plaintiff's trial strategy was at least in part to attack the inadequacy of Trooper Ziegler's investigation, Plaintiff was clearly aware of the extent of the investigation well before the end of the criminal trial.  Indeed, Plaintiff's criminal defense counsel appeared to pursue a line of questioning at Plaintiff's preliminary hearing inquiring as to the extent of the investigation conducted by Trooper Ziegler.  See SMF Exhibit F, at 33 (asking Trooper Ziegler "[h]ow many times did [he] interview [D.M.] before [he] filed these charges").  Thus, Plaintiff's reckless investigation claim would have accrued well before September 11, 2019.  Yet, because Plaintiff did not present this claim within two years of its accrual, it is now time barred.

## IV.  CONCLUSION

WHEREFORE, it is respectfully requested that the instant motion be granted and that judgment be entered in favor of the Defendant, Marc Ziegler, and against the Plaintiff, Tim Burton, on all claims asserted in the Amended Complaint [ECF 23].

Respectfully submitted,

MICHELLE A. HENRY
Attorney General


    s/ Scott A. Bradley

Office of Attorney General          Scott A. Bradley
Litigation Section                  Senior Deputy Attorney General
1521 Waterfront Place               Attorney I.D. No. 44627
Mezzanine Level
Pittsburgh, PA 15222                Karen M. Romano
                                    Chief Deputy Attorney General
Phone: (412) 565-3586
Fax:    (412) 565-3019

Date:  August 21, 2023