IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIM BURTON, | ) |
| Plaintiff, | ) No. 2:21-CV-01215-KT |
| vs. | ) |
| | ) Magistrate Judge Kezia O. L. Taylor |
| MARC ZIEGLER, *in his Individual Capacity as a Trooper for the Pennsylvania State Police*, | ) |
| Defendant. | ) |

**MEMORADUM OPINION ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Pending before the Court is the Summary Judgment Motion filed by Defendant Marc Ziegler, in his individual capacity as a Trooper for the Pennsylvania State Police ("Defendant"). ECF No. 45. Plaintiff Tim Burton ("Plaintiff") brought this civil rights action under 42 U.S.C. § 1983 seeking redress for the alleged violation of his constitutional and state law rights as part of his arrest on fourteen criminal charges, thirteen of which were sex crimes alleged by his stepdaughter. ECF No. 23. In his Amended Complaint, Plaintiff brought two counts against Defendant, Count I for malicious prosecution in violation of the Fourth Amendment and Fourteenth Amendment and Count II for reckless investigation in violation of the Fourth Amendment. *Id*.

Defendant seeks summary judgment on the grounds that 1) he is entitled to judgment on Plaintiff's claim of malicious prosecution because there was probable cause to initiate criminal proceedings against Plaintiff; and 2) he is entitled to qualified immunity on Plaintiff's claim of

reckless investigation, and/or that claim is barred by the applicable statute of limitations.  ECF No. 45.  For the reasons below, Defendant's motion for summary judgment will be granted.

I. **Relevant Factual and Procedural Background**

The record as read in the light most favorable to Plaintiff establishes the background set forth below.[1]  On May 7, 2017, Michele Swan ("Swan"), her daughter D.M., then 19, attended a gem show at the Washington County Fairgrounds with a family friend and the friend's daughter.  Swan Dep., ECF No. 48-5, at 10:16-22.  At that time, and at all relevant times, Swan and Plaintiff were married to one another.  Swan Dep., ECF No. 48-5, at 7:15 – 8:15, Plaintiff Dep., ECF No. 48-6, at 13:1-9.  Thus, Plaintiff was D.M.'s stepfather.  Swan Dep., ECF No. 48-5, at 12:8-11.  Urged by the family friend in whom D.M. had earlier confided, after leaving the show D.M. told her mother, Swan, that Plaintiff "has been sexually assaulting her for years…. From the time she was 14 until the time she turned 18."  Swan Dep., ECF No. 48-5, at 14:3-15.  The women were ultimately directed to and went that day to the Belle Vernon State Police Station, Westmoreland

---

[1] These facts are taken from the parties' concise statements of material facts, and responses thereto, and are undisputed unless otherwise indicated.  ECF No. 47, ECF No. 58, and ECF No. 59.  We note, however, that Plaintiff has grouped together numerous numbered paragraphs in his response, ECF No. 58, to the moving party's Concise Statement of Material Facts, ECF No. 47, rather than responding to each numbered paragraph as required.  W.D. Pa. LCvR 56.  In particular, as to the facts (1) surrounding D.M.'s allegations and (2) of the criminal proceedings, rather than "admitting or denying whether *each fact* contained in the moving party's Concise Statement of Material Facts is undisputed and/or material," W.D. Pa. LCvR 56(C)(1)(a) (emphasis supplied), Plaintiff offers universal responses.  As to both groups, Plaintiff states:  "Admitted in part and disputed in part.  It is admitted that these excerpts to the record are true, it is specifically disputed that they establish that probable cause existed . . . ."  ECF No. 58, at *1, *2.  The Court will consider admitted those facts about which Plaintiff states "these excerpts to the record are true. . . . "  *See Polansky v. Vail Homes, Inc.,* CV 13-296, 2016 WL 2643253, at *4 (W.D. Pa. May 10, 2016) ("Under Local Rule 56(E) . . . undisputed facts 'will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.' LCvR 56(E) (2013).  In prior cases, this Court has strictly applied LCvR 56(C) and 56(E).")  Probable cause is a question of law; a dispute as to probable cause does not, therefore, demonstrate a genuine dispute as to any material fact.

County, Pennsylvania, where Marc Ziegler ("Defendant") was on duty. Swan Dep., ECF No. 48-5, at 16:2-9, 17 :3-7; Defendant Dep., ECF No. 48-4, at 12-13, *See* Investigative Report, ECF No. 48-5, at 2-3. Defendant had been employed as a Pennsylvania State Trooper since 2009, Defendant Dep., ECF No. 48-4, at 7, and was then with the Crimes Section at the Belle Vernon State Police Station. *Id*. at 7-9.

When Defendant interviewed D.M. "she related that she was being sexually assaulted by her father -- stepfather, Mr. Burton." *Id*. at 13. *See also* Inv. Report, ECF No. 48-1, at 2-3. These assaults included Plaintiff forcing D.M. to perform oral sex on Plaintiff as well as Plaintiff forcing her to have vaginal intercourse. *Id*. at 4. D.M. reported that this had occurred from the Summer of 2012 until the Winter of 2016. *See* Defendant Dep., ECF No. 48-4, at 13-14. *See also* Inv. Report, ECF No. 48-1, at 2-3.

The next day, May 8, 2017, Defendant asked Plaintiff to come to the Belle Vernon State Police Station for an interview and told Plaintiff that the matter could not be discussed on the telephone. *See* Defendant Dep., ECF No. 48-4, at 15-16, at 40-42; Plaintiff Dep., ECF No. 48-6, at 15:3-22. *See* also Inv. Report, ECF No. 48-1, at 5. Plaintiff stated that he was at work but would meet with Defendant a day later, May 9, at 7:00 a.m. *See* Defendant Dep., ECF No. 48-4, at 40-42 . Plaintiff called back later on May 8, leaving the message that he would come to the Belle Vernon State Police Station that afternoon at 2:00 p.m. to meet with Defendant. *Id.* Later, Defendant called Plaintiff and told Plaintiff that he could not meet at that time. *Id.* Defendant subsequently received a voice mail from a criminal defense attorney stating that Plaintiff had been advised not to speak with the police. Defendant Dep., ECF No. 48-4, at 41; Plaintiff Dep., ECF No. 48-6, at 15:19-16:5. *See also* Inv. Report, ECF No. 48-1, at 5.

Also on May 8, 2017, D.M. and her mother returned to the Belle Vernon State Police Station and spoke again with Defendant. Defendant Dep., ECF No. 48-4, at 43:22-23; Swan Dep., ECF No. 48-5, at 33:8-11. At his deposition, Defendant stated that:

> [D.M.] was hesitant in going through with the alleged charges…. She was nervous. I think she didn't want -- I don't want to speculate because I don't recall exactly what she said. But I do recall her scared about what's going to happen after the charges are brought forward and unsure of her financial standing in terms of where she's going to live, what are they going to do for money. Things of that nature.

Defendant Dep., ECF No. 48-4, at 45:15-23. Defendant did not include D.M.'s reservations about proceeding in his Investigative Report. *See* Inv. Report, ECF No. 48-1.

On the night of May 7th or on the morning of May 8th, D.M left voicemails for Defendant. Swan Dep., ECF No. 48-5, at 31:20-32:19. At Swan's deposition, she testified that she heard D.M.'s side of the conversation with Defendant; when asked at her deposition "what did [D.M.] say?," Swan related:

> A. She said that she wanted to recant. She did not want to go through with this.
> Q. Okay. Those are kind of two different things. Did she say she didn't want to go through with it?
> A. Different voice mails, different responses.
> Q. In those conversations you had with [D.M.], did she ever -- and let's start with on the night of the 7th, the morning of the 8th. Did she ever tell you that this never happened? 'I'm making it up'?
> A. She did not. She still has not.
> Q. That was my next one. Has she ever told you that she was making this up?
> A. (Witness shakes head no.) (Whereupon, there was a brief court reporter clarification.)
> THE WITNESS: No.

*Id.* D.M. later testified at several criminal proceedings.[2] Defendant compiled an investigative report on the matter. *See* Inv. Report, ECF No. 48-1.

On May 10, 2017, Defendant filed a Criminal Complaint and Affidavit of Probable Cause against Plaintiff, Defendant Dep., ECF No. 48-4, at 14-44, with fourteen counts, including rape and other sexual assault charges. Crim. Compl., ECF No. 48-1, at 26-33. A Pennsylvania Magisterial District Judge issued an arrest warrant on May 11, 2017. *See* Arrest Warrant, ECF No. 48-1, at 38-42.

Plaintiff proceeded to a trial by jury on or about September 9, 2019. *See* Criminal Docket ECF No. 48-2, at 13. Of the 11 counts presented to the jury,[3] Plaintiff was found not guilty of four counts, but the jury was hung on the remaining counts and a mistrial was declared. *See Id. See* Verdict Slip, ECF No. 48-2, p 54-55. On February 4, 2020, the District Attorney sought to *nolle pross* the remaining charges, and on February 7, 2020, a Washington County judge dismissed all remaining charges with prejudice and *nolle prosse* was entered. *See* Criminal Docket, ECF No. 48-2, p 14.

Which brings us to Plaintiff's 42 U.S.C. § 1983 suit in this Court. Plaintiff's Amended Complaint asserts malicious prosecution under the Fourth and Fourteenth Amendments at Count I and reckless investigation under the Fourth Amendment, at Count II. ECF No. 23. On August

---

[2] D.M. testified at several Pennsylvania criminal proceedings, including Plaintiff's preliminary hearing, pretrial habeas corpus hearing, and Plaintiff's criminal jury trial. *See* Defendant Dep., ECF No. 48-4, at 60; Plaintiff Dep., ECF No.48-6 at 23; Swan Dep., ECF No. 48-5, at 44:9-45:4. *See also* Notes of Testimony 10/25/17, ECF No. 48-1, at 49-76; Notes of Testimony 6/1/2018, ECF No. 48, at 30-43.

[3] Two counts were ordered dismissed following Plaintiff's pretrial petition for habeas corpus relief. *See* Criminal Docket, ECF No. 48-2, at 11; S*ee* Order, ECF No. 48-2, at 46 -50.

24, 2023, Defendant moved for summary judgment on all claims, ECF No. 45, and Plaintiff filed a response on December 6, 2023.  ECF No. 55.  Defendant maintains (1) that the facts and circumstances of D.M.'s interview on May 7, 2017, gave rise to probable cause to charge Plaintiff, and so Plaintiff's Fourth Amendment claim for malicious prosecution fails; and (2) that Defendant is entitled to qualified immunity on the reckless investigation claim because a reasonable officer would have believed that probable cause existed.  Alternatively, Defendant asserts that a reckless investigation claim would have arisen in May 2017, was not asserted until September 2021, and is thus time-barred.

In response, Plaintiff maintains that as to both of his malicious prosecution and reckless investigation claims, Defendant lacked probable cause to charge him, and that probable cause is a question of fact for the exclusive decision of the jury.  ECF No. 57.  Plaintiff further argues that Defendant is not entitled to qualified immunity, for want of probable cause, and that the reckless investigation claim is not time-barred.  Finally, Plaintiff asserts that material issues of fact remain for the trier of fact.  The motion has been fully briefed and is ready for disposition.

**II.    Summary Judgment Standard**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a) & (c). A fact is material only if it is "[a] fact[ ] that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).  Summary judgment may be granted against a party who fails to adduce facts

sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Upon considering a motion for summary judgment:

> the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

### III.   Analysis

In general, 42 U.S.C. § 1983 affords private citizens a means to redress violations of federal law committed by state actors. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of federal law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996). To establish a Section 1983 claim, a plaintiff must show a

deprivation of a "right secured by the Constitution and the laws of the United States ... by a person acting under color of state law." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995)). There is no dispute that Defendant was acting under color of state law at all times relevant to this litigation.

In section 1983 cases, "the exact contours of the underlying right said to have been violated" must be determined. *Bracken v. Manor Twp.*, 665 F. Supp. 3d 675, 690 (W.D. Pa. 2023) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Plaintiff alleges that he (a) faced malicious prosecution without probable cause in violation of the Fourth and Fourteenth Amendments and (b) was subjected to reckless investigation in violation of the Fourth Amendment.

**A. Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments (Count I)**

Plaintiff must proffer sufficient evidence to create a triable issue of fact as to all five of these elements to prevail on a malicious prosecution claim under section 1983:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). *See also Domenech v. City of Philadelphia*, No. CIV.A. 06-1325, 2009 WL 1109316, at *9 (E.D. Pa. Apr. 23, 2009), *aff'd*, 373 F. App'x 254 (3d Cir. 2010) ("If Plaintiffs have not proffered evidence sufficient to create a triable issue of fact as to all five prongs, their malicious prosecution claim must fail as a matter of law.") Defendant has conceded point one, that he initiated a criminal proceeding, and point two, that the proceeding ended in Plaintiff's favor. ECF No. 58. Neither party has briefed point five, whether the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

8

consequence of a legal proceeding; our holding today makes that discussion superfluous. The remaining issues of whether the proceeding was initiated without probable cause or with malice are most salient.

**(1) Probable Cause**

The Fourth Amendment prohibits an arrest of a citizen except upon probable cause. *Orsatti v. New Jersey State Police,* 71 F3d. 480, 482 (3d Cir. 1995). Probable cause stops well short of the standard required for conviction, and even well short of a belief in certain guilt; "[p]robable cause exists if there is a 'fair probability' that the person committed the crime at issue. *Wilson v. Russo*, 212 F.3d 781, 789–90 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). The standard is that of a "reasonable person" evaluating the "facts and circumstances within the arresting officer's knowledge":

> Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."

*Rogers*, 120 F.3d at 453 (citing *Orsatti*, 71 F.3d at 483). To review, by the time Plaintiff was arrested, Defendant had interviewed the stepdaughter, D.M., then nineteen, in-person. D.M. related that Defendant had sexually assaulted her several times. Among other things, Plaintiff forced her to perform oral sex on him and forced her to have vaginal intercourse with him. And told Defendant that these sexual assaults began in Summer 2012, when D.M. was fourteen, and continued until Winter 2016 when D.M. was nearly eighteen. In short, in Defendant's perception, he had credible, in-person testimony, from an adult, who stated that she had been sexually abused by her stepfather. Plaintiff does not challenge the fact of the interview or D.M.'s credibility.

The starting point for probable cause is examining the elements of the crimes charged. *Wright v. City of Philadelphia,* 409 F.3d 595, 602 (3d Cir. 2005). D.M.'s statements that she was

9

the victim of forcible sexual intercourse, oral penetration, and other acts while a minor enabled Defendant to make out the charges against Plaintiff, including Rape, Statutory Sexual Assault (18 Pa.C.S. § 3122.1(b)), Involuntary Deviate Sexual Intercourse (18 Pa.C.S. § 3123), Aggravated Indecent Assault (18 Pa.C.S. § 3125), Indecent Assault (18 Pa.C.S. § 3126), along with Endangering Welfare of Children (18 Pa.C.S. § 4304) and Corruption of Minors (18 Pa.C.S. § 6301). *See* Statement of Material Facts, ECF No. 47, at ¶¶ 24-25.

For his part, Defendant testified that

> [D.M.] made a statement -- or she filed a complaint with us that seemed reasonably believable through my training and experience. A year after this stopped happening, she came forward. I believed that she was telling the truth. I wholeheartedly believed her…. The statements she made were criminal in nature, and I believed her. And those statements were heinous, what she was saying. And like I said, if a victim of crime comes into the barracks and states a crime has been committed against her, we do a level of interviewing. And I talked to her, and I watched body language. I watched how she communicates to me what happened. I've interviewed many people that I didn't believe, but this case, [D.M.], I did believe her.

Defendant Dep., ECF No. 48-4, at 14-15.  Plaintiff claims that the interview was in itself insufficient to establish probable cause to proceed with charges. But the Third Circuit has ruled that "statements of a victim witness are typically sufficient to establish probable cause in the absence of '[i]ndependent exculpatory evidence or substantial evidence of [a] witness's own unreliability.'" *Dempsey v. Bucknell Univ.,* 834 F.3d 457, 477–78 (3d Cir. 2016), citing *Wilson*, 212 F.3d at 790. Further, in the "context of sexual assault, the Third Circuit has repeatedly held that a victim's account of a sexual assault is sufficient as a matter of law to establish probable cause." *Carson v. Aurand,* 837 F. App'x 121, 123 (3d Cir. 2020) (sex offense prosecution in which defendant acquitted of all charges had probable cause though based solely on victim statement).

Plaintiff alleges that Defendant "purposefully omitted from his Investigative Report that the alleged victim appeared at the Barracks . . . with the specific intent to recant her story." ECF

10

No. 57.  We agree that there may have been confusion about the definition of "recant;" however, it may well be, as Defendant surmised, that D.M. was anxious about the practical repercussions of going through with allegations against her stepfather, such as instability in housing and financial support.  More importantly, the record shows that D.M. never recanted and did not say that the events as she had described them to Defendant had not taken place.  Swan, in her deposition, when asked "Did she [D.M.] ever tell you that this never happened" "I'm making it up?" stated, "She did not.  She still has not." Swan confirmed with the next question, ". . . . Has she ever told you that she was making this up?," and Swan shook her head no.  Swan Dep., ECF No. 48-5, at 43:12-22.  Plaintiff has also conceded that he never heard D.M. "recant" or state that the allegations were untrue.  Plaintiff Dep., ECF No. 48-6, at 24:7-20.  In short, the record on summary judgment lacks evidence to show that D.M. ever indicated to Defendant that she repudiated her claims and, thus, her credibility as a witness was not undermined and the record is void of independent exculpatory evidence sufficient to outweigh the probable cause previously established.[4]

---

[4] *See Collick v. William Paterson Univ.,* No. 21-2281, 2022 WL 14002177, at *5 (3d Cir. Oct. 24, 2022) (court considered "[i]ndependent exculpatory evidence," questioning reliability of first-hand sexual assault testimony, concluding that witness was reliable, and exculpatory evidence "does not outweigh probable cause previously established.").  The Court of Appeals for the Third Circuit has explained that,

> [i]n determining whether there was probable cause to arrest Plaintiffs-Appellants for aggravated sexual assault in the first degree, we must also consider whether there is "[i]ndependent exculpatory evidence or substantial evidence of [M.M's] own unreliability that outweighs the probable cause otherwise established."  Plaintiff's-Appellants contend that the District Court improperly disregarded several pieces of exculpatory evidence going to the issue of consent: (1) M.M's prior sexual relationship with Collick; (2) M.M.'s statement regarding Collick's sexual performance during the assault ("Oh, I see you have stage fright."); (3) M.M.'s "suggestion to [Nurse Hatt] that she not only walked willingly to her room with Williams, … Scott, and Walt, but that she consented to sexual acts in her room with both Williams and Walt"; and (4) the absence of injuries of M.M.'s body.  This alleged

11

The critical inquiry remains whether the record establishes that when Defendant filed the charges leading to Plaintiff's arrest, the facts within Defendant's knowledge led to his reasonable belief that there was a fair probability that Plaintiff had committed these offenses.  We conclude that he had that reasonable belief.   The objective facts as they then existed gave rise to probable cause to believe that Plaintiff had committed the offenses with which he was charged.  What is more, the Court finds that a reasonable jury could not find otherwise.  In this context, we note Plaintiff's contention that in section 1983 actions, probable cause is a question of fact exclusively reserved to the jury, branding this Court's inquiry into the matter illegitimate.  Quite the contrary, the Third Circuit has addressed the matter as follows:  "In general, the question of probable cause in a section 1983 damages suit *is* a question of fact for the jury, *unless* there is only one reasonable determination possible."  *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998) (emphasis supplied); *Ingram v. Lupas,* 353 F. App'x.  674, 677-78 (3d Cir. 2009).  In this context "summary judgment is only appropriate if 'a reasonable jury could not find a lack of probable cause.'" *Dempsey v. Bucknell Univ.,* 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Montgomery*, 159 F.3d at

---

> exculpatory evidence does not outweigh the probable cause previously established.

In his responsive concise statement of material facts, Plaintiff adduces additional material facts. Of these, the Court finds the following are not exculpatory or material to whether probable cause was established: that Defendant lacked training in sex offenses and that he failed to ask D.M. or Swan about D.M.'s delay in lodging a complaint;  that Defendant was inexperienced in the investigation and filing of sex offenses; that D.M. did not make a prompt complaint; that upon hearing D.M.'s testimony, Defendant was emotional, sad, and called Plaintiff "a monster," that Defendant did not verify the mother's presence in the home during assaults; that Defendant did not search the title to a boat on which first assault was alleged to have taken place; that Defendant did not investigate D.M.'s biological father; that Defendant did not search D.M.'s social media accounts; and that Defendant "ignored" that Swan did not believe her daughter. (This last fact is partly disputed by Defendant, who states that he interpreted Swan as saying that the situation was "unbelievable.")   Whether D.M. recanted upon her second visit to Belle Vernon State Police Station was discussed *supra*.

124. As we do here, "a district court may conclude that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (internal quotation and citation omitted).

### (2) Malice or purpose other than bringing the plaintiff to justice

To prevail on a malicious prosecution claim under section 1983, Plaintiff must also establish that Defendant acted with "malice." *McKenna* 582 F.3d 447, 461 (3d Cir. 2009). This Court has defined malice as follows: "Malice" exists when a defendant acts on the basis of "hatred or ill will," or where his or her actions "evidence a 'reckless and oppressive disregard [for] the plaintiff's rights." *Ansell v. Ross Twp.,* No. 09-CV-1398, 2012 WL 1038825, at *24 (W.D. Pa. Mar. 28, 2012), citing *Doherty v. Haverford Township*, 513 F.Supp.2d 399, 409 (E.D. Pa.2007) (additional citations omitted). Other than Plaintiff referring to Defendant's feeling emotional and sad upon hearing D.M.'s testimony and Defendant having called Plaintiff "a monster" as evidence of malice, he does not direct our attention to any material evidence, and we are unaware of any such evidence. For example, the record contains nothing to suggest that Plaintiff had any personal animus toward Defendant or had met Defendant prior to having heard D.M.'s report of his wrongdoing. Defendant Dep., ECF No. 48-4, at 11- 12. Defendant happened to be on duty at the Belle Vernon State Police Station when D.M. made her report, Defendant Dep., ECF No. 48-4, at 14-15, and at Plaintiff's deposition, tending to prove Defendant's point, Plaintiff testified that he did not "know of any other reason other than [D.M.'s] allegations why [Defendant] Trooper Ziegler would have filed the charges." Plaintiff Dep., ECF No. 48-6, at 28. Even if Plaintiff had, for the sake of argument, brought forth material evidence of malice, he fails to explain how that malice induced Defendant to bring charges against him for a purpose other than justice. In this

case, the record does not support a finding of malice. *See Ansell v. Ross Twp.*, No. 09CV1398, 2012 WL 1038825, at *24 (W.D. Pa. Mar. 28, 2012) (at times, malice can be inferred from an officer's decision to initiate criminal charges without probable cause.)  In sum, Plaintiff can neither establish that probable cause was lacking, nor that Defendant acted with malice.  For then, Defendant is entitled to summary judgment with respect to Plaintiff's malicious prosecution claim.

### B. Reckless Investigation in Violation of the Fourth Amendment (Count II)

Plaintiff states that his rights under the Fourth Amendment were violated because Defendant chose not to investigate various matters, including, but not limited to, the ownership of the boat, D.M.'s biological father's background, D.M.'s social media accounts.[5]  Even if Defendant could show the existence of material facts demonstrating reckless investigation, he would still fail to show a section 1983 violation.  The constitutional right to be free from a reckless investigation was not clearly established in May 2017, the relevant time, as required to overcome qualified immunity.  *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (Even if Harvard had brought the reckless investigation claim under the Fourth Amendment, the officers would still be given qualified immunity because this right was not clearly established at the time of the investigation.).

As to this claim, Defendant also asserts that it is time-barred, while Plaintiff counters that it is not.  We address that statute of limitations issue first and then Defendant's claim of qualified immunity.

---

[5] Plaintiff first based his claim of reckless investigation upon the Fifth and Fourteenth Amendments.  This Court dismissed this claim in the original Complaint without prejudice, noting that even if a reckless investigation claim existed, it was grounded in the Fourth Amendment, ECF No. 19.  Plaintiff then filed the Amended Complaint grounding this claim in the Fourth Amendment.  ECF No. 23.

**(1) Statute of Limitations**

The Supreme Court has held that:

> Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts. *Owens v. Okure,* 488 U.S. 235, 249–250 (1989) (additional citations omitted).

*Wallace v. Kato*, 549 U.S. 384 (2007)  The parties here agree that under Pennsylvania law, the limitations period is two years.  The parties disagree, however, as to when the claim of reckless investigation accrued.   Defendants assert that a reckless investigation claim would be barred by the statute of limitations because it would have accrued in May 2017 when the charges were filed, or possibly at the latest, in September 2019 at the end of the criminal trial,  but the claim was not asserted until the initial complaint in September 2021.  Plaintiff counters that the claim is timely because it accrued only in February 2020 with the entry of a *nolle prosse* in the criminal prosecution.

In fact, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Montgomery v. DeSimone*, 159 F.3d at 126 (3d Cir. 1998) (quoting *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)), "even though the full extent of the injury is not then known or predictable.' *Wallace*, 549 U.S. at 391 (citations omitted); *Hill-Johnson v. Catanzaro*, No. CV 19-30, 2020 WL 6110847, at *3 (W.D. Pa. Aug. 20, 2020).  Plaintiff offers the February 2020 *nolle prosse* date as the accrual date, that date being fewer than two years before the complaint was filed.  But Plaintiff has not correspondingly brought to our attention, nor are we aware of, cases that rely on the *nolle prosse* for commencement of the statute of limitations.   Common sense dictates that Plaintiff would have known well before the February 2020 *nolle prosse* date the parameters of Defendant's

investigation. We conclude, therefore, that the latest that the statute of limitations on Plaintiff's section 1983 claim began to run was at the end of the criminal trial on September 11, 2019, when he would have known the extent of the investigation. Since more than two years elapsed between that date and filing of the reckless investigation claim, that claim is time barred.

### (2) Qualified Immunity

Plaintiff's claim of reckless investigation fails, independently, because Defendant is entitled to qualified immunity. Qualified immunity provides that "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is thus an affirmative defense, making the government actor immune from suit where facts alleged or shown by a plaintiff make out violation of constitutional right, and where "that right was *clearly established* at time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223 (2009) (emphasis supplied).

Against Defendant's invocation of qualified immunity, Plaintiff offers nothing in the way of legal support. Rather, he states that the essence of the claim is the same as that in malicious prosecution, the lack of probable cause, and this, Plaintiff says, was clearly established at the relevant time. We have, however, determined above that there was probable cause. We determine now that Defendant is entitled to qualified immunity as to a reckless investigation claim under the Fourth Amendment because, as explained *supra*, Plaintiff has not made out a violation of a constitutional right.

**IV.     Conclusion**

For the reasons set forth above, Defendant is entitled to summary judgment on all remaining claims. Consequently, Defendant's motion for summary judgment will be granted. An appropriate order will follow.


Dated: March 29, 2024.

BY THE COURT:

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge


cc:   All Counsel of Record
      Via Electronic Mail